UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMANTHA STANLEY,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Civil No. 07-924-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

    Plaintiff Samantha Stanley seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments. This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is upheld.

**STANDARDS**

1- OPINION AND ORDER

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to a second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings). The Listings describe, for each of the major body systems, impairments which qualify as severe enough to be construed as *per se* disabling. 20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.

2- OPINION AND ORDER

2005). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC). A person's RFC is the most he or she could do in a work setting despite the total limiting effects of the claimant's impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); Social Security Ruling (SSR) 96-8p.

The Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her RFC, age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, at the fifth step, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner

3- OPINION AND ORDER

meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the administrative law judge (ALJ). *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720-21.

## BACKGROUND

The relevant background has been presented thoroughly by the parties and in the ALJ's decision. Plaintiff was thirty-four years old at the time the ALJ rendered the decision. Plaintiff

did not complete high school, but has earned a general equivalency diploma (GED).  She has past work experience as an assistant manager, a line cook, a grocery store cashier, a jewelry box assembler, and a fast food worker.

Plaintiff applied for SSI on May 11, 2004.  She alleged that her disability began on November 30, 2000.  This application was denied initially and upon reconsideration.  A hearing was held on October 16, 2006, with the ALJ hearing testimony from plaintiff, who was represented, and Kathryn Heatherly, a vocation expert (VE).  On November 14, 2006, the ALJ issued an unfavorable decision, denying plaintiff's application.  This decision became the Commissioner's final decision upon the Appeals Council's denial of review.  *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.  Specific medical facts and background will be addressed as required by the parties' legal arguments.

## SUMMARY OF THE ALJ'S FINDINGS

At Step One of the five-step analysis used by the Commissioner, the ALJ found that plaintiff had not engaged in SGA since the alleged onset of her disability.  Transcript of Record (hereinafter "Tr.") 14, Finding 2.

At Step Two, the ALJ found that plaintiff had severe impairments including spinal stenosis and obesity, which in combination are severe.  Tr. 14, Finding 3.

At Step Three, the ALJ found that plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment.  Tr. 16, Finding 4.

At Step Four, the ALJ found that plaintiff was unable to perform her past relevant work.  Tr. 19, Finding 6. The ALJ so found after determining that plaintiff had the RFC to perform light work, which requires the ability to walk and stand for approximately six hours each during

the workday, occasional sitting, and the ability to lift up to twenty pounds occasionally and ten pounds frequently. Tr. 16, Finding 5. In addition, the ALJ determined that plaintiff would benefit from the ability to change position for a few minutes every hour, could only occasionally climb or stoop, and was incapable of skilled work because of pain and side effects from pain medication. *Id.*

At Step Five, applying the Medical-Vocational Guidelines as a framework, and based on testimony from the VE, the ALJ found that plaintiff was able to perform jobs that exist in significant numbers in the national economy, including motel cleaner and small products assembly worker. Tr. 20, Finding 10.

## DISCUSSION

Plaintiff contends that this court should reverse the Commissioner's final decision and remand for payment of benefits, or, in the alternative, remand for further consideration of the evidence because: (1) the ALJ's findings did not include all of plaintiff's severe impairments and (2) the vocational testimony was flawed.

### 1. Severe Impairments

At Step Two, the ALJ found that plaintiff's combination of spinal stenosis and obesity was a severe impairment. Plaintiff argues that the ALJ erred in finding that plaintiff's hip condition, depression, and carpal tunnel syndrome were not severe impairments. An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Ninth Circuit has observed that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

The ALJ discussed plaintiff's hip impairment. Although the ALJ did not mention every complaint of hip pain in the record, the ALJ made a thorough review of plaintiff's condition. Relying on X-rays and a bone scan that showed – at most – mild abnormalities, the ALJ concluded that plaintiff's hip condition was not severe. Tr. 15.

The ALJ discussed plaintiff's depression, noting that plaintiff has been treated for intermittent symptoms of depression. The ALJ, observing that there was "no evidence of any psychiatric hospitalizations . . . [or] that she has required significant mental health treatment," concluded that plaintiff's depression was not severe. Tr. 15.

The ALJ discussed plaintiff's carpal tunnel syndrome, observing that there was "no objective evidence establishing any medically determinable impairment to account for her symptoms." Tr. 15. Plaintiff, however, argues that the ALJ ignored the results of a magnetic resonance imaging (MRI) scan and a treatment note by Dr. Paul Haddeland. Defendant argues that the "scant objective evidence" in the record is insufficient to establish carpal tunnel syndrome. Def.'s Br. at 11.

The ALJ mentioned the MRI of plaintiff's cervical spine. While acknowledging that the MRI revealed "some abnormalities," the ALJ noted that plaintiff's spinal cord appeared within normal limits. Tr. 15. The ALJ's conclusion is supported by the MRI record, which indicates only "some minor bony eburnation" and no other irregularities. Tr. 198.

The ALJ did not discuss Dr. Haddeland's treatment note.[1] Tr. 18. In December 2001, plaintiff reported right wrist pain to Dr. Haddeland. Although Dr. Haddeland indicated that there

---

[1] The ALJ did discuss an X-ray that was taken when plaintiff visited Dr. Haddeland's office. Tr. 15.

7- OPINION AND ORDER

was "worsening of [plaintiff's] previous carpal tunnel," this was evidently based upon plaintiff's self-reporting. Tr. 258 ("[Plaintiff] denied any trauma or injury stating that she has a history of carpal tunnel."). Doctor Haddeland also noted there were "Tinel's and Phalen's signs," which are two tests used to diagnose carpal tunnel syndrome. *Id*. The ALJ did not discuss Dr. Haddeland's opinion that plaintiff had "Tinel's and Phalen's signs."

Although plaintiff contends that the ALJ erred by not listing plaintiff's hip condition, depression, and carpal tunnel syndrome as severe impairments, any alleged error is rendered harmless by the ALJ's step-four analysis. *See Lewis v. Astrue*, 498 F.3d 909 (9th Cir. 2007). In *Lewis*, the ALJ determined at step-two that the plaintiff had a severe impairment due to a laminectomy and diabetes mellitus. *Id*. at 910. The ALJ, however, did not mention the plaintiff's bursitis at step-two. *Id*. at 911. On appeal, the Ninth Circuit pointed out that the ALJ extensively discussed the plaintiff's bursitis at step-four and incorporated relevant limitations into the RFC. *Id*. "As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless." *Id*.

Here, the ALJ properly considered all of plaintiff's impairments at step-four, rendering harmless any alleged error at step-two. Citing X-rays and a bone scan that revealed only mild abnormalities with plaintiff's hips, the absence of serious mental health treatment, and a lack of objective support for carpal tunnel syndrome, the ALJ concluded that plaintiff's hip condition, depression, and carpal tunnel syndrome did not require significant work restrictions. In addition, the ALJ discussed how plaintiff's daily activities were inconsistent with her alleged symptoms, observing that plaintiff's "statements concerning the intensity, persistence and limiting effects of

8- OPINION AND ORDER

[her] symptoms are not entirely credible." Tr. 17. Plaintiff has not objected to the ALJ's credibility determination and this court finds it well supported by evidence in the record.

Although plaintiff asserts that the ALJ erred in failing to discuss the treatment note of Dr. Haddeland, the ALJ's omission does not justify rejecting the step-four treatment of plaintiff's carpal tunnel syndrome. Dr. Haddeland indicated "Tinel's and Phalen's signs" consistent with carpal tunnel syndrome, but did not diagnose carpal tunnel syndrome or suggest that plaintiff was incapable of work activity. Considering the minimal evidence of carpal tunnel syndrome, the ALJ was entitled to find the impairment not severe and to not incorporate related functional limitations into the RFC.

Plaintiff's suggestion that "the ALJ must include functional limitations from all of the claimant's impairments whether that impairment is severe and non-severe" is without support. Pl.'s Reply at 4. The regulations clearly state that an ALJ "*will consider* the impact of [a claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity." 20 CFR 404.1529(d)(4) (emphasis added); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe . . . .'"); *and* 20 C.F.R. § 416.929(d)(4) (stating that the factfinder will "consider" all impairments, whether "severe" or not, in determining a RFC). Thus, the ALJ was required to "consider" the impact of plaintiff's impairments – whether severe or not – in constructing the RFC, but was not required to "include" functional limitations from impairments unless they were found to result in limitations.

9- OPINION AND ORDER

"In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Here, the ALJ assigned plaintiff an RFC that limited her to light work, occasional bending or stooping, and allowed her to change positions for a few moments every hour in addition to normal breaks. The ALJ also accounted for plaintiff's pain and the side effects of pain medication by limiting her to unskilled and semi-skilled work. The ALJ provided sufficient reasons for not assigning a more restrictive RFC, based on inferences logically flowing from the evidence, including both the scant medical evidence and daily activities that contradicted plaintiff's allegations of disabling symptoms. As in *Lewis*, any alleged error at step-two is harmless because the ALJ fully discussed each impairment at step-four.

    **2.**    **Vocational Testimony**

The VE, responding to a hypothetical, testified at the hearing that plaintiff could perform the jobs of motel cleaner and small products assembly worker. Tr. 428-29. The VE opined that there were 11,000 motel cleaner jobs in Oregon and over one million in the United States economy. Tr. 428-30. The VE opined that there were 6,000 small products assembly jobs in Oregon and one half million in the United States economy. *Id.* The ALJ, relying on this testimony, concluded there were a significant number of jobs in the national economy that plaintiff could perform given her RFC, age, education, and work experience.

"An ALJ may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Plaintiff argues that because the estimated numbers of motel cleaner and small products

10- OPINION AND ORDER

assembly jobs are "very suspect," the job information provided by the VE was unreliable and should have been excluded. Pl.'s Br. at 11.

The opinion of a VE regarding the number of available jobs may be based on documents available to the expert, including federal government bulletins, occupational information received from state employment services, local newspapers, and trade journals. At plaintiff's hearing, the VE explained that she determined the availability of the motel cleaner and small products assembly jobs in the national economy by referring to the Dictionary of Occupational Titles (DOT), in conjunction with additional sources. Tr. 433-35. The court notes that the process by which a VE determines the number of available jobs is inherently subjective: As the ALJ acknowledged at the hearing, some vocational experts "think there are more [jobs], some think there are less." Tr. 437; *see Ryan v. Apfel*, No. 00-6092-RE, 2001 WL 210177, at *4 (D. Or. Jan. 23, 2001) (relying on the ALJ's finding that there were 50,000 small products assembly jobs in the national economy).

Even if this court were to conclude that the VE overestimated the number of available motel cleaner and small products assembly jobs, the ALJ's decision should be upheld. The ALJ stated at the hearing that if the VE was "wrong by 90 percent . . . we still meet the substantial numbers test." Tr. 437. And the ALJ indicated in the written decision that the motel cleaner and small products assembly jobs "would continue to exist in significant numbers in the national economy even if [the VE's] estimate were overstated by a substantial amount." Tr. 20. Thus, the ALJ's decision is not premised on the numbers that plaintiff claims are suspect.

"We have previously held that between 1,000 and 1,500 jobs in the regional economy constitutes a significant number for purposes of the meaning of the Social Security Act."

11- OPINION AND ORDER

*Mickelson-Wurn v. Comm'r Soc. Sec. Admin.*, 2008 WL 2795881, 285 Fed. Appx. 482, at *4 (9th Cir. July 21, 2008). Here, the VE testified at the hearing that there were 17,000 jobs in the regional economy that plaintiff could perform. Even if the VE overestimated the number of available jobs by ninety percent, there would still be 1,700 jobs in the regional economy that plaintiff could perform. Because the ALJ explicitly based its findings on a reduced number of available positions, plaintiff's assertion of error is immaterial.

Plaintiff also argues that her due process rights were violated because of "significant, improper road blocks thrown up by an ALJ intent on not allowing inquiry into the reliability of the numbers needed by the Commissioner to meet his step five burden of production." Pl.'s Reply at 11.

The regulations do not require the use of the formal rules of evidence at an administrative hearing. *See* 20 C.F.R. § 404.950(c). "A claimant in a disability hearing is not entitled to unlimited cross-examination, but rather 'such cross-examination as may be required for a full and true disclosure of the facts.'" *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983) (quoting 5 U.S.C. § 556(d)). Furthermore, the ALJ "has discretion to decide when cross-examination is warranted." *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988).

Having reviewed the transcript of the hearing, this court concludes that the ALJ did not abuse his discretion in restricting the cross-examination of the VE. Counsel for plaintiff appeared at the hearing and was allowed to cross-examine the VE. When counsel for plaintiff began asking repetitive questions, however, the ALJ instructed the attorney to move on to new questions. Tr. 431, 439. The ALJ also rejected plaintiff's request for a production of documents, since the documents sought are publicly available. Tr. 435.

Despite the attorney's assertion that the ALJ stymied his efforts to develop the case, the transcript clearly indicates that no due process violation occurred. Counsel's questions were repetitive and his request for production of documents unnecessary. Accordingly, the ALJ properly exercised his discretion in curtailing the VE's cross-examination.

## CONCLUSION

Based on the foregoing, the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record. The final decision of the Commissioner denying plaintiff Samantha Stanley's application for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this  8   day of December, 2008.

                                                /s/ ANCER L. HAGGERTY  
                                                ANCER L. HAGGERTY  
                                             United States District Judge